101 So.2d 808 (1958)
S. ANSIN, Petitioner,
v.
Ralph L. THURSTON, Respondent.
S. ANSIN, Petitioner,
v.
Ralph L. THURSTON, as Administrator of the Estate of Ralph L. Thurston, Jr., deceased minor, Respondent.
Supreme Court of Florida.
March 26, 1958.
Rehearing Denied April 12, 1958.
*809 Blackwell, Walker & Gray, Miami, for petitioner.
Nichols, Gaither, Green, Frates & Beckham and Sam Daniels, Miami, for respondent.
DREW, Justice.
The petitioner, defendant in the trial court, seeks review by certiorari of a decision of the District Court of Appeal, Third District, by which certain judgments against him in tort actions for negligence were affirmed.
The only point presented in the appeal below was the alleged error of the trial court in denying defendant's motion for directed verdict on the issue of liability. The actions against him, both arising out of the same circumstances, were by the respondent individually and as administrator of the estate of his minor son, who died by drowning in a "rockpit" on land owned by defendant. In each case the cause of action was dependent upon proof of facts sufficient to come within the doctrine of tort *810 liability usually referred to as attractive nuisance.
It was the opinion of the district court that the facts alleged and proved, details of which appear fully in the published report of the case in that court, were sufficient to present a jury question under the rule enunciated in the case of Allen v. William P. McDonald Corporation, Fla., 42 So.2d 706, to the effect that the maintenance of an artificial body of water where there exists some unusual element of danger not present in ponds or natural bodies of water generally may constitute actionable negligence supporting recovery for injury or death by drowning of a minor child upon the theory noted above.
The petition herein is necessarily prosecuted under that portion of amended Article V, Section 4(b), [4(2), F.S. 1957] of the Florida Constitution, F.S.A., authorizing review by certiorari in this Court of "any decision of a district court of appeal * * that is in direct conflict with a decision of another district court of appeal or of the supreme court on the same point of law * * *," and the corresponding provision of Rule 2.1, subd. a(5) (b) of the Florida Appellate Rules.
Petitioner contends that the decision below is not in accord with the rule of the case relied upon by the district court, and that it conflicts with two subsequent decisions where this Court affirmed judgments for defendant in such actions, but did not purport to overrule the earlier case. Newby v. West Palm Beach Water Co., Fla., 47 So.2d 527; Lomas v. West Palm Beach Water Co., Fla., 57 So.2d 881. In the brief much attention is devoted to the character of the banks surrounding the body of water involved, and argument is addressed primarily to the point that the present case is distinguishable upon the facts from Allen v. McDonald Corp., supra. The very fact that petitioner finds it necessary in a proceeding of this nature to review with such particularity the evidence in the various cases, and to refer to authorities elsewhere to bolster his position, would indicate that the argument is primarily upon the merits of the decision attacked as opposed to any contention that it brings into existence a conflict of authority in this jurisdiction. These considerations, among others, impel our conclusion that the writ should be denied for failure to show direct conflict between the decision in question and a previous ruling "on the same point of law." Rule 2.1, subd. a(5) (6) supra.
We have heretofore pointed out that under the constitutional plan the powers of this Court to review decisions of the district courts of appeal are limited and strictly prescribed. Diamond Berk Insurance Agency, Inc., v. Goldstein, Fla., 100 So.2d 420; Sinnamon v. Fowlkes, Fla., 101 So.2d 375. It was never intended that the district courts of appeal should be intermediate courts. The revision and modernization of the Florida judicial system at the appellate level was prompted by the great volume of cases reaching the Supreme Court and the consequent delay in the administration of justice. The new article embodies throughout its terms the idea of a Supreme Court which functions as a supervisory body in the judicial system for the State, exercising appellate power in certain specified areas essential to the settlement of issues of public importance and the preservation of uniformity of principle and practice, with review by the district courts in most instances being final and absolute.
To fail to recognize that these are courts primarily of final appellate jurisdiction and to allow such courts to become intermediate courts of appeal would result in a condition far more detrimental to the general welfare and the speedy and efficient administration of justice than that which the system was designed to remedy.
The suggestion is inevitable that the detailed consideration given the issues here presented and the exposition of reasons by written opinion, contrary to the customary *811 appellate practice in denying certiorari, involves the expenditure of quite enough judicial labor to have enabled the Court to dispose of this controversy on its merits, and so far as the particular litigation is concerned our efforts might more logically be so directed. But it is of obvious importance that there should be developed consistent rules for limiting issuance of the writ of certiorari to "cases involving principles the settlement of which is of importance to the public, as distinguished from that of the parties, and in cases where there is a real and embarrassing conflict of opinion and authority" between decisions. See Layne & Bowler Corp. v. Western Well Works, 261 U.S. 387, 43 S.Ct. 422, 423, 67 L.Ed. 712. While the court in the latter case dealt with rules couched in varying language, the conclusion is inescapable that our own constitutional provision has the same general objectives. A limitation of review to decisions in "direct conflict" clearly evinces a concern with decisions as precedents as opposed to adjudications of the rights of particular litigants.
Similar provisions in the court systems of other states have been so construed: "A conflict of decisions * * * must be on a question of law involved and determined, and such that one decision would overrule the other if both were rendered by the same court; in other words, the decisions must be based practically on the same state of facts and announce antagonistic conclusions." 21 C.J.S. Courts § 462.
The general import of these pronouncements should be of benefit in charting a course of practice under amended Article V, and considered in relation to the instant case they serve to sustain and explain our conclusion herein.
Writ denied.
TERRELL, C.J., THORNAL and O'CONNELL, JJ., and WIGGINTON, District Judge, concur.