PER CURIAM.
The Starlings appeal from a final summary judgment entered against them on their negligence count (Count I) and the dismissal of their attractive nuisance count (Count II). The appellants sued the Sahas after their minor son, Chad, drowned while swimming in a pond which had been excavated on the Sahas’ land. Chad was an excellent swimmer, but he was caught and held under water by the suction of a hose attached to a pump, which had been left running, unsupervised, at the pond. We think the attractive nuisance count states a good cause of action and it was improperly *518 dismissed; but we affirm the summary judgment on the negligence count because the record establishes as a matter of law that the relationship between the Sahas and the operator of the pump was one of employer-independent contractor.
COUNT I: NEGLIGENCE
The record shows that Dr. Saha entered into an oral agreement with White to dig a pond on his property to water Saha’s cattle. In return, White was entitled to keep or resell all the dirt. By the summer of 1980 the pond was excavated, but it needed to be squared and sloped. White arranged for Davis, another dirt broker, to do the final work, because he did not have the needed equipment. Davis started his pump running on the morning of the day Chad drowned. He left it running unattended, and was not on the property at the time Chad drowned by becoming caught in the hose. Saha did not supervise Davis or White in any manner, although he made periodic visits to the property to feed and look after his livestock.
The trial court held that the relationship between White and Davis and the Sahas was one of employer-independent contractor. The basic element in an employer-employee relationship is the right or the actual exercise of control by the employer over the details or means by which the work is performed. Farmers & Merchants Bank v. Vocelle, 106 So.2d 92 (Fla. 1st DCA 1958). In this case, Davis was clearly an independent contractor. Although he may have been negligent in leaving the pump running, his employer, Saha, has no vicarious liability for his negligence. Fisherman’s Paradise, Inc. v. Greenfield, 417 So.2d 306 (Fla. 3d DCA 1982).
Further, the record establishes that appellees did not know Davis was running the pump at the time of this accident or that it was a dangerous risk to the neighborhood children who trespassed to swim in the pond. In order for there to be liability on the part of the landowner, it must be established that the landowner knew or should have known of the danger or risk to the class of persons, one of whom was injured. The Sahas did not know of the pump or any defect in the hose; nor should they have known because they were not exercising control over the pond. That control was in the hands of the independent contractor. See Winn Dixie Stores, Inc. v. Virginia Construction Company, Inc., 330 So.2d 158 (Fla. 1st DCA 1976).
COUNT II: ATTRACTIVE NUISANCE
In Count II appellants alleged that Dr. Saha and his employees knew neighborhood children entered Dr. Saha’s property to swim in the excavated pond; and that the unsupervised running of the pump in the pond, with its concealed and unguarded intake hose beneath the surface involved an unreasonable risk of death to the children; and that Chad was drowned when he became caught in the hose by the suction of the pump. The lower court dismissed this count because appellants alleged that the child was attracted onto Dr. Saha’s premises by the prospect of swimming in the pond rather than curiosity about the pump or hose. This view, however, overlooks the fact that the pond alone did not kill the child. The combined effect of the hose holding him and the water in the pond accomplished the drowning.
In applying the attractive nuisance doctrine, we are bound by the Florida Supreme Court’s requirement that the plaintiff allege and prove that a child was lured or attracted onto the land by the condition or structure that injured him. Johnson v. Bathey, 376 So.2d 848 (Fla.1979); Concrete Construction, Inc. of Lakeworth v. Petterson, 216 So.2d 221 (Fla.1968). The source of this requirement is apparently the much criticized opinion by Justice Holmes in United Zinc & Chemical Company v. Britt, 258 U.S. 268, 42 S.Ct. 299, 66 L.Ed. 615 (1921).[1] However, we should not read *519 this requirement so literally that we abolish application of the attractive nuisance doctrine to concealed dangers operating in connection with conditions or other objects on property, which jointly contribute to the child’s injury.
The Florida Supreme Court’s cases which discuss the allurement requirement do not mandate this interpretation. In Johnson, a child was injured by a pump operating on dry land, after being attracted onto the land by the prospect of receiving surplus vegetables from a packing house. The pump alone was the cause of his injury. The discussion of the allurement plus injury element in Petterson is dictum. Petter-son held that the explosion of a construction cartridge which was found and carried away by a child the previous day was too remote in time and location to impose liability on the landowner. The injury has to occur on the premises.
Allen v. William P. McDonald Corporation, 42 So.2d 706, 706 (Fla.1949), states the rule of law which is controlling in this case:
[T]he owner of artificial lakes, fish ponds, mill ponds, gin ponds and other pools, streams and bodies of water are not guilty of actionable negligence on account of drownings therein unless they are constructed so as to constitute a trap or raft or unless there is some unusual element of danger lurking about them not existent in ponds generally. (Emphasis supplied).
The Allen court held that the complaint stated a cause of action under the attractive nuisance doctrine. The complaint alleged that a child was attracted onto the defendant’s property by white sand piled around an artificial pond. It said the steep slopes and resulting drop-off into the water constituted a hidden or concealed danger. As in the case at bar, the child in Allen drowned in the pond. The combination of what attracted him, the sand plus the concealed danger (steep slopes), killed him. The court did not separate the two. Significantly, the court did not say recovery would not lie because the child was attracted by the benign white sand rather than the hidden steep slopes.
Ansin v. Thurston, 98 So.2d 87 (Fla. 3d DCA 1957), cert. denied, 101 So.2d 808 (Fla.1958), followed Allen. In Ansin, a child was lured onto the property by banks of white sand surrounding a pit filled with water. The child evidently found a raft at the end of a dock and drowned when it tipped over while he was playing on it. The concealed danger was the sudden and steep drop-off of the sides of the pit. The white sand of the artificial pond attracted him, but the concealed danger caused his drowning. The court did not deny recovery because the child was not attracted by the hidden, steep banks. See also Larnel Builders v. Martin, 105 So.2d 580 (Fla.3d DCA 1958), cert. dismissed, 110 So.2d 649 (Fla.1959).
Hendershot v. Kapok Tree Inn, Inc., 203 So.2d 628 (Fla.2d DCA 1967), which was relied on by the trial court, is distinguishable from the case before us, although we have trouble distinguishing it from Ansin and Larnel. In Hendershot, the court held there were insufficient allegations that “a man-made condition which involved an unusual element of extreme danger” existed in an artificial pond where a child drowned. Id. at 630. The complaint alleged the concealed danger was a sudden drop-off two feet from the edge of the water. In the instant case, the complaint alleges the existence of an extremely dangerous intake hose of sufficient size and strength to catch and hold a swimmer. A better man-made trap we cannot imagine.
The point is that if the thing that attracts a child onto the premises has concealed in its depths a dangerous object or is in a dangerous state, the attractive nuisance doctrine should apply. The first case in Florida to adopt the attractive nuisance doctrine, Stark v. Holtzclaw, 90 Fla. 207, 105 So. 330 (1925), illustrates this point.[2] *520 There, a child was attracted onto the defendant’s property by a beautiful blooming magnolia tree. He climbed the tree to pick the blossoms, unaware that hidden in the foilage of the tree were wires charged with high electrical voltage. The court applied the attractive nuisance doctrine, although it could not be said the child was attracted onto the property by the wires that injured him, anymore than in the instant case the child was attracted by the pump that killed him.
Because Count II states a good cause of action, the trial court erred in dismissing it. At this juncture it is improper for us to look beyond the pleadings and affirm the dismissal because other matters in the record might sustain a summary judgment on the grounds that the workmen were independent contractors or that Dr. Saha did not know the pump was being negligently used. Green Springs, Inc. v. Calvera, 239 So.2d 264 (Fla.1970); Vogel v. Allen, 443 So.2d 368 (Fla. 5th DCA 1983).
In any event, Florida case law does not shield a landowner from liability if a child is injured on his premises by an “attractive nuisance” created or operated on his land by an independent contractor. In Butler v. Porter-Russell Corporation, 217 So.2d 298 (Fla.1968), a child was injured on a construction site where a building project was underway. A concrete block fell on him from a pile of blocks, which had been negligently stacked by a subcontractor. The blocks were delivered to the site at the end of a work day, when no one else was present, and the injury occurred shortly thereafter. The court reversed a summary judgment for all four defendants, the owner, the general contractor, the trucker who delivered the blocks, and the sub or materi-alman who supplied the blocks. The court stated:
The test to be applied in a case of this type is whether a reasonably prudent person should have anticipated the presence of children or other persons at the place where appellee created a condition that a jury could find was an ‘inherently dangerous condition’ ....
Id. at 300. The court concluded a jury could find the defendants, or some of them, should have foreseen the possibility a block would fall on a child.
In Carter v. Livesay Window Company, Inc., 73 So.2d 411 (Fla.1954), the court reversed a summary judgment in favor of a general contractor, and allowed the case to proceed to a jury against the general contractor and the landowner. In Carter, a child was killed on a building site when a heavy window fell on him. The window had been improperly braced by a subcontractor on the site. The court said the test was whether a reasonably prudent person should anticipate the presence of children at the place where a jury might find an inherently dangerous condition or a dangerous instrumentality was created. If an independent contractor creates an inherently dangerous condition that may be found to be an attractive nuisance, the independent contractor status does not insulate the employer from liability. See Fouraker v. Mullis, 120 So.2d 808 (Fla. 1st DCA), cert. denied, 123 So.2d 674 (Fla.1960).
Accordingly, we affirm the summary judgment as to Count I; and we reverse the dismissal of Count II.
AFFIRMED IN PART AND REVERSED IN PART.
DAUKSCH, J., concurs.
FRANK D. UPCHURCH, Jr., and SHARP, JJ., concur in part; dissent in part, with opinions.

. Most courts now have abandoned the requirement of allurement. W. Prosser, Law of Torts § 58 (4th ed. 1971).

. See also Atlantic Peninsular Holding Co. v. Oenbrink, 133 Fla. 325, 182 So. 812 (1938), where a child was attracted to a hotel under construction and fell through an open shaft *520 when the fourth floor collapsed due to a latent defect in the floor's construction. The attraction was the unfinished hotel and the danger was the defective floor and unguarded shaft.